Leroy KING, Appellant,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Appellee.

No. 23479.

United States Court of Appeals
Fifth Circuit.

Oct. 12, 1966.

William D. Roth, Asst. Atty. Gen., Lakeland, Fla., Earl Faircloth, Atty. Gen., Tallahassee, Fla., for appellee.

Before RIVES, BELL and THORNBERRY, Circuit Judges.

PER CURIAM.

This appeal is from a judgment denying habeas corpus to a prisoner of the State of Florida. The district court's holding that the applicant had exhausted the remedies available in the Florida courts[1] is not questioned on appeal.

This appellant, a Negro, represented by retained counsel upon his trial by

1. As required by 28 U.S.C.A. § 2254.

jury in a Florida state court, was convicted of assault on a white woman with intent to commit rape, and was sentenced to twenty years in prison on October 24, 1958. His direct appeal was dismissed due to a procedural error on the part of his retained counsel (Rec. Vol. III, pp. 145, 147).[2] His petition for habeas corpus in the federal district court was first denied without prejudice for failure to exhaust available state remedies. On July 15, 1965 this Court ordered that the petition for habeas corpus be returned to the district court "for re-evaluation in the light of Fay v. Noia, 372 U.S. 391, 393, 435–438 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963)." A full evidentiary hearing was held in the district court on December 29 and 30, 1965. At that hearing the applicant was represented by able appointed counsel and was also permitted himself to examine and cross-examine witnesses and to address the court. The record and exhibits comprise more than a thousand typed and handwritten pages. At the conclusion of that hearing the district court dictated into the record extensive findings of fact and conclusions of law[3] and denied the writ, but granted a certificate of probable cause and allowed an appeal in forma pauperis.[4]

After a careful reading and study of the voluminous record, exhibits and briefs, we find ourselves in full agreement with the findings, conclusions and decision of the district court. We refer briefly to the various contentions.

■ 1. *Unlawful Arrest.* The applicant made no confession or admission of guilt, but the legality of his arrest may possibly have a bearing on the question of illegal search. Florida Statute § 901.15, F.S.A., provides that "A peace officer may without warrant arrest a person: * * * (2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it."

The arresting officer acted upon the report of the prosecutrix, afterward established without dispute, that a felony had been committed, and upon such description as the prosecutrix could give of her assailant and of his automobile. The district court found that there was probable cause for the arrest, and that finding is not clearly erroneous.

■ 2. *Illegal Search.* There was no substantial evidence of an illegal search of the applicant's automobile. As to his underwear and trousers, a deputy sheriff testified without objection as follows:

"MR. SMILEY [State Attorney]: I hand you this bundle and ask you to examine it and open it and state in what connection you identify it?

"Answer [Deputy Sheriff]: Those are the shorts that Buster King had on that were taken out to the hospital for examination.

"Question: From whence did you receive these and when?

"Answer: It was the next morning. I asked Buster King for his shorts that he had on and he said he still had the ones that he had on that night and he said 'I have them on.' And I said 'I would like to have them.' So he went and took them off and give [sic] them to me.

"Question: I hand you another bundle and tell me what that is?

"And Mr. Smiley again: We ask that these shorts be marked for identification as State's Exhibit J.

"Answer: And these are the pants that Buster wore the morning or had on the morning of September 21st that was [sic] picked up at his house. I asked him about them and he said 'They are at the house,' and I went out and picked them up and took them to the hospital for identification.

2. King v. State of Florida, Dist.Ct.App.Fla., 2nd Div., 1959, 111 So.2d 499.

3. See the Reporter's Transcript of Proceedings, Vol. III of the Record at pp. 406–414.

4. See 28 U.S.C.A. § 2253, § 1915.

"MR. SMILEY: We ask that the trousers be marked for identification as State's Exhibit K."

The evidence was not sufficient to establish an unlawful search or seizure.

Moreover, at the time of the applicant's trial in 1958, while Florida state law forbade the admission of evidence obtained by an unreasonable search and seizure,[5] the admission of such evidence in a state court for a state crime was not forbidden by the Fourteenth Amendment of the Federal Constitution.[6]

 3. *Lack of Preliminary Hearing and Arraignment.* A preliminary hearing is not essential to due process of law.[7] The applicant proceeded to trial without objection to the failure of arraignment, and under Florida law, any such failure does not affect the validity of the proceeding.[8]

4. *Use of Perjured Testimony.* There is no evidence that the prosecution had any knowledge or notice of any alleged perjury committed at the applicant's trial. (See Record, Vol. III, pp. 114, 119–121, 188.)

5. *Conspiracy Between Prosecutor and Defense Counsel.* This charge was conclusively refuted. (Record, Vol. III, pp. 113–114, 172.)

6. *Denial of Right of Appeal.* The mistake of applicant's retained counsel in failing to perfect appeal from his judgment of conviction, while regrettable, does not constitute a denial of due process.[9] The applicant was unable to obtain appellate review of his judgment of conviction because of the procedural error committed by his own retained counsel

and not because of any action by the State.

7. *Systematic Exclusion of Negroes from Jury.* There was testimony that Negroes had been on jury panels for years (Record, Vol. III, pp. 89–91, 98–100). The only evidence in support of this contention was applicant's own testimony that he had never seen a member of his race on a jury in the county (Record, Vol. III, pp. 248–249). There was thus a total lack of sufficient evidence to sustain this charge.

There were other contentions [10] which would not invalidate the judgment of conviction, but were nonetheless refuted by the record.[11]

The judgment is affirmed.

---

5. Atz v. Andrews, 1922, 84 Fla. 43, 94 So. 329, 332.

6. Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L. Ed. 1782; Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

7. Baugus v. State, Fla.1962, 141 So.2d 264, 267.

8. Fla.Stat.Ann. § 908.02; Padgett v. State, 1934, 117 Fla. 75, 157 So. 186.

9. Pate v. Holman, 5 Cir. 1965, 341 F. 2d 764, 772–775; Dodd v. United States, 9 Cir. 1963, 321 F.2d 240, 243.

10. Such as, the prosecutor's reference to applicant as a "nigger" and the refusal of the trial judge to have testimony re-read to the jury.

11. Record, Vol. III, pp. 114, 138, 311 and Record, Vol. III, pp. 113, 114, 172.